UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:13-cv-170-RJC

| | |
|---|---|
| BELFOR USA GROUP, INC., d/b/a ) <br> BELFOR PROPERTY RESTORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GMC CHARLOTTE, LLC, d/b/a GMC ) <br> PROPERTIES, ) <br> ) <br> Defendant. ) <br> _____ ) | **ORDER** |

**THIS MATTER** comes before the Court on Plaintiff Belfor USA Group, Inc.'s ("Belfor") Motion for Entry of Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(1), (Doc. No. 13), filed on June 5, 2013. Defendant GMC Charlotte, LLC ("GMC") has not opposed the Motion for Entry of Default Judgment and the time for doing so has expired.

**I.     BACKGROUND**

A.     Procedural Background

Belfor commenced this lawsuit in the Superior Court of the State of North Carolina, Mecklenburg County, on January 7, 2013. (Doc. No. 1-1). Belfor filed a First Amended Complaint on February 7, 2013. (Id.). Former defendants Wells Fargo, C-III and Berkadia were served with the Complaint on February 13, 2013, and removed the action to this Court on March 15, 2013. (Doc. No. 1). On June 5, 2013, Plaintiff filed a stipulation of dismissal, dismissing Wells Fargo, C-III and Berkadia from this action. (Doc. No. 14).

Defendant GMC was also served with the Amended Complaint on February 13, 2013.

1

(Doc. No. 13-5). GMC failed to answer or otherwise defend the action within the time permitted by the Federal Rules of Civil Procedure. Belfor filed a Motion for Entry of Default on April 8, 2013, (Doc. No. 8), and the Clerk of Court entered GMC's default on April 26, 2013, (Doc. No. 9). Belfor filed the instant Motion for Entry of Default Judgment, (Doc. No. 13), on June 5, 2013.

      B.      Factual Background

Because of its default in this matter, GMC is deemed to have admitted those well-pleaded facts alleged in the Complaint that are material to Belfor's claims against it. See Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established."). Accordingly, the factual summary below is consistent with that alleged in Belfor's Amended Complaint. (Doc. No. 1-1).

Belfor is in the business, among other things, of providing specialized restoration services in connection with the remediation and restoration of property which has suffered property damage as a result of insured casualty losses. (Doc. No. 1-1: Amended Complaint at ¶ 12). Upon Belfor's information and belief, Defendant GMC and/or former defendant Wells Fargo are, or at one time were, the owners of real property commonly known as Emerald Bay Apartments, Buildings A-F, located at 5029 Cherrycrest Lane, Charlotte, North Carolina (the "Property"). (Id. at ¶ 13). On or about October 27, 2011, the Property was severely damaged by a fire. (Id. at ¶ 15).

On or about October 28, 2011, Belfor agreed to furnish labor, materials, and equipment in

connection with emergency services, fire restoration, reconstruction of structures, and other improvements to the Property (the "Services") that had been damaged by the fire. (Id. at ¶ 16). Belfor was authorized to commence the Services via a Work Authorization Contract ("Work Order"). (Id. at ¶ 17; Doc. No. 13-1: Work Order). The Work Order was executed by GMC on or about October 28, 2011. (Id. at ¶ 18). The Work Order provides Belfor with a legal assignment of insurance proceeds for any and all work performed by Belfor. Specifically, it provides:

> The undersigned [GMC] hereby transfers, assigns and conveys to Contractor [BELFOR] his/her/their right, title and interest in and to the insurance policy proceeds and all drafts for work performed or to be performed by Contractor [BELFOR]. Accordingly, undersigned [GMC] authorizes and directs their insurer (named below) to make "BELFOR USA" a payee on all insurance drafts for all insurance work performed by Contractor [BELFOR] on the above damaged property. The undersigned [GMC] also agrees to immediately endorse and tender all drafts as produced to the Contractor [BELFOR].

(Id. at ¶ 19). On October 29, Belfor commenced emergency restoration services on the Property. (Id. at ¶ 20). On or about December 1, 2011, Belfor entered into a "Construction Contract between Owner and Belfor USA Group, Inc." (the "Contract") with GMC to perform the Services to improve the Property. (Id. at ¶ 21; Doc. No. 13-2: Construction Contract). Under the Contract, Defendant GMC assigned all of its right, title, and interest in and to any insurance proceeds covering Belfor's work in restoring the Property. (Id. at ¶ 22). Specifically, the Contract provides the following:

> The Owner [GMC] hereby assigns their right, title and interest in those proceeds adjusted by their insurer for the work performed by Contractor to BELFOR USA. Owner agrees to provide notice to their insurer of this provision and of this Contract.

(Id.). As compensation for the Services performed on the Property under the Contract and the

3

Work Order, on February 16, 2012, ACE Insurance issued a check in the amount of $384,666.74, payable to Defendants GMC and Berkadia to cover, among other things, some of the Services that Belfor had performed at the Property pursuant to the Work Order and Contract. (Id. at ¶ 23). On July 25, 2012, Belfor was informed that a different contractor would be completing the fire restoration work. (Id. at ¶ 26). At that point, Belfor had performed Services on the Property with a value of $294,297.69. (Id. at ¶ 27).

Belfor invoiced GMC for $294,297.69 on October 3, 2012. (Doc. Nos. 1-1 at ¶ 27; 13-3: Invoice). According to Belfor, the amount invoiced represents the portion of the total work Belfor had performed prior to termination and remains due and owing. (Doc. No. 13-4: Aff. of Evans Lalas). Belfor states that despite the fact that it fully performed its obligations under the Work Order and Contract, GMC failed to pay Belfor for the Services performed on the Property. (Id. at ¶¶ 36, 43).

## II. LEGAL STANDARD

The entry of default judgment is governed by Rule 55 of the Federal Rules of Civil Procedure which provides in relevant part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." FED. R. CIV. P. 55(a).

Upon the entry of default, the defaulted party is deemed to have admitted all well-pleaded allegations of fact contained in the complaint. Ryan, 253 F.3d at 780 (citations omitted); Weft, Inc. v. GC Inv. Assocs., 630 F. Supp. 1138, 1141 (E.D.N.C. 1986) (citations omitted); FED. R. CIV. P. 8(b)(6) ("An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied."). However, the defendant is

4

not deemed to have admitted conclusions of law and the entry of "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." Ryan, 253 F.3d at 780 (citations omitted); see also E.E.O.C. v. Carter Behavior Health Servs., Inc., No. 4:09-cv-122-F, 2011 WL 5325485, at *3 (E.D.N.C. Oct. 7, 2011). Rather, in determining whether to enter judgment on the default, the court must determine whether the well-pleaded allegations in the complaint support the relief sought. See Ryan, 253 F.3d at 780 (citing Weft, 630 F. Supp. at 1141); DIRECTV, Inc. v. Pernites, 200 F. App'x 257, 258 (4th Cir. 2006) (a ""defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law"") (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)); Arista Records, LLC v. Gaines, 635 F. Supp. 2d 414, 416 (E.D.N.C. 2009); 10A Wright, Miller & Kane, Federal Practice and Procedure § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default ... and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

To that end, the Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Univ., Inc., 616 F.3d 413, 417 (4th Cir. 2010) (citations omitted). Nonetheless, default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party." SEC v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

If the court finds that liability is established, it must then determine damages. Carter Behavior Health, 2011 WL 5325485, at *4 (citing Ryan, 253 F.3d at 780-81; Gaines, 635 F. Supp. 2d at 416-17). The court must make an independent determination regarding damages,

and cannot accept as true factual allegations of damages. Id. (citing Lawbaugh, 359 F. Supp. 2d at 422). While the court may conduct an evidentiary hearing to determine damages, it is not required to do so, but may rely instead on affidavits or documentary evidence in the record to determine the appropriate sum. See EEOC v. CDG Mgmt., LLC, No. RDB-08-2562, 2010 WL 4904440, at *2 (D. Md. Nov. 24, 2010) (citations omitted); EEOC v. North Am. Land Corp., No. 1:08-cv-501, 2010 WL 2723727, at *2 (W.D.N.C. Jul. 8, 2010).

## III.  DISCUSSION

Defendant GMC failed to pay Belfor for the work it performed in partially restoring GMC's property to its pre-loss condition and Belfor subsequently initiated this action. (Doc. Nos. 1-1 at ¶¶ 28-37; 13-4 at ¶ 5). Defendant GMC was served with process on February 13, 2013. (Doc. No. 13-5). GMC also demonstrated its awareness of this action when it executed a Consent to Removal in March 2013. (Doc. No. 1-3). GMC failed to respond to the First Amended Complaint and the Clerk of Court entered Default against GMC on April 26, 2013. (Doc. No. 9). Notice of the Entry of Default was served upon GMC on May 29, 2013. (Doc. No. 13-7).

The amount sought in the First Amended Complaint is for a sum certain based upon the invoice sent to Defendant GMC by Belfor following completion of Belfor's work, and is identical to the amount sought in Belfor's Complaint.[1] (Doc. No. 13 at ¶ 15). Belfor also seeks attorney's fees and costs in the amount of $26,408.61, and is entitled to recovery of such expenses from Defendant GMC pursuant to the Contract and under North Carolina law. (Doc.

---

[1] In the First Amended Complaint, Belfor sought a judgment that it was entitled to payment of at least $294,297.69. (Doc. No. 1-1 at ¶¶ 45, 106).

6

No. 13-8: Aff. of Eric Linden); N.C. GEN. STAT. § 6-21.6(b). Belfor also seeks interest on the unpaid balance at the rate of 1% per month from thirty days after the Invoice was due and payable, November 18, 2013, to the date of judgment,[2] which equals $17,657.86 in pre-judgment interest.[3]

Having reviewed the claims asserted in the Amended Complaint, (Doc. No. 1-1), and the evidence submitted in connection with Belfor's Motion for Default Judgment, (Doc. No. 13), the Court finds that Belfor's Motion should be, and hereby is, **GRANTED**.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff Belfor's Motion for Entry of Default Judgment, (Doc. No. 13), is **GRANTED**;

2. Judgment in the principal amount of **$294,297.69** is entered against Defendant GMC Charlotte, LLC d/b/a GMC Properties, and in favor of Belfor USA Group, Inc.;

3. Belfor shall be entitled to pre-judgment interest on the principal amount owed, at the contractual rate of 1% per month from November 18, 2012, through June 18, 2013, in an amount totaling **$17,657.86**;

4. Belfor is awarded from Defendant GMC its actual attorneys' fees and costs in the amount of **$26,408.61**;

---

[2] Belfor used June 18, 2013 as the approximate date of entry of the judgment.
[3] Pursuant to the Contract, payment of the Invoice was due in fifteen days. (Doc. No. 13-2: Contract at Art. 2.4). Failure to pay the Invoice within thirty days of the date it was due, November 18, 2012, allowed Belfor to charge 1% interest per month on the balance due. (Id. at Art. 2.7).

5. Belfor shall be entitled to post-judgment interest at the statutory rate until the judgment is fully paid, pursuant to 28 U.S.C. § 1961; and

6. Belfor is legally entitled to any additional insurance proceeds which may later come into the possession of Defendant GMC Charlotte, LLC d/b/a GMC Properties which were assigned to Belfor under the relevant contracts at issue in this case.

Signed: July 26, 2013

Robert J. Conrad, Jr.
United States District Judge